MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ANDRES FUENTE TAPIA, LEONARDO
CONDE RODRIGUEZ, ABRAHAM
GUTIERREZ, MARIO HERNANDEZ
REYES, RICARDO TRUJILLO GOMEZ,
CHRISTIAN ACAJABON, VICTORINO
GALLARDO, ABELARDO PEREZ,
ARMANDO MENSINAS, EDUARDO
PEREZ ROBLES, FERNANDO RIOS,
JAVIER FLORES, JULIO SANTIAGO
MORALES, NOEL MONROY ALONSO,
LORENZO GALINDO, SALVADOR
MAXIMILIANO ROJAS, SERGIO
FRANCISCO MATIAS, OSCAR ENRIQUE
COSIGUA ZUREC, ROBERTO CANALES
and MARCOS ALCANTARA *individually
and on behalf of others similarly situated,*

**COMPLAINT**

**RULE 23 CLASS ACTION &
COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

*Plaintiffs,*

-against-

HU HOLDINGS LLC (d/b/a HU KITCHEN),
JASON KARP, JESSICA KARP, and
JORDAN BROWN,

*Defendants.*
--------------------------------------------------------X

Plaintiffs Andres Fuente Tapia, Leonardo Conde Rodriguez, Abraham Gutierrez, Mario

Hernandez Reyes, Ricardo Trujillo Gomez, Christian Acajabon, Victorino Gallardo, Abelardo

Perez, Armando Mensinas, Eduardo Perez Robles, Fernando Rios, Javier Flores, Julio Santiago

Morales, Noel Monroy Alonso, Lorenzo Galindo, Salvador Maximiliano Rojas, Sergio Francisco

Matias, Oscar Enrique Cosigua Zurec, Roberto Canales and Marcos Alcantara individually and on behalf of others similarly situated (collectively "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Hu Holdings LLC (d/b/a Hu Kitchen), Jason Karp, Jessica Karp, and Jordan Brown (collectively the "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are present and former employees of Defendants Hu Holdings LLC (d/b/a Hu Kitchen), Jason Karp, Jessica Karp, and Jordan Brown.

2.       Defendants own, operate, and/or control a vegetarian/health food restaurant located at 78 Fifth Avenue, New York, NY 10011, operating under the name "Hu Kitchen."

3.      Upon information and belief, Individual Defendants Jason Karp, Jessica Karp, and Jordan Brown serve or served as owners, managers, principals or agents of Defendant Hu Holdings LLC ("Defendant Corporation"), and through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs are current and former employees of Defendants.  They are (were) employed as delivery workers.

5.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants, without appropriate minimum wage for the hours per week that they worked.

6.      Rather, Defendants have failed to pay Plaintiffs appropriately for any hours worked at the straight rate of pay.

7.      Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

8.      In addition, Defendants have maintained a policy and practice of requiring Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.

9.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.  At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs to work without providing the minimum wage required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant located in this district.  Further, Plaintiffs ARE employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

14.     Plaintiff Andres Fuente Tapia ("Plaintiff Tapia" or "Mr. Tapia") is an adult individual residing in Queens County, New York.  Plaintiff Tapia was employed by Defendants from approximately September 2015 until on or about February 13, 2017.

15.     Plaintiff Leonardo Conde Rodriguez ("Plaintiff Conde" or "Mr. Conde") is an adult individual residing in Kings County, New York. Plaintiff Conde has been employed by defendants from approximately March 2015 until the present date.

16.     Plaintiff Abraham Gutierrez ("Plaintiff Gutierrez" or "Mr. Gutierrez") is an adult individual residing in Bronx County, New York.  Plaintiff Gutierrez was employed by defendants from approximately September 2013 until on or about December 2014.

17.     Plaintiff Mario Hernandez Reyes ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in New York County, New York.  Plaintiff Hernandez has been

employed by defendants from approximately February 2016 until the present date.

18.     Plaintiff Ricardo Trujillo Gomez ("Plaintiff Trujillo" or "Mr. Trujillo") is an adult individual residing in Kings County, New York. Plaintiff Trujillo was employed by defendants from approximately January 2014 until on or about November 2014.

19.     Plaintiff Christian Acajabon ("Plaintiff Acajabon" or "Mr. Acajabon") is an adult individual residing in Queens County, New York.  Plaintiff Acajabon has been employed by Defendants from approximately July 2012 until the present date.

20.     Plaintiff Victorino Gallardo ("Plaintiff Gallardo" or "Mr. Gallardo") is an adult individual residing in Bronx County, New York.  Plaintiff Gallardo has been employed by defendants from approximately March 2016 until the present date.

21.     Plaintiff Abelardo Perez ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Kings County, New York. Plaintiff Perez was employed by Defendants from approximately November 2015 until on or about May 2016.

22.     Plaintiff Armando Mensinas ("Plaintiff Mensinas" or "Mr. Mensinas") is an adult individual residing in Queens County, New York. Plaintiff Mensinas was employed by Defendants from approximately February 2014 until on or about January 2015.

23.     Plaintiff Eduardo Perez Robles ("Plaintiff Robles" or "Mr. Robles") is an adult individual residing in Queens County, New York. Plaintiff Robles was employed by defendants from approximately February 2014 until on or about June 2015.

24.     Plaintiff Fernando Rios ("Plaintiff Rios" or "Mr. Rios") is an adult individual residing in Kings County, New York. Plaintiff Rios has been employed by Defendants from approximately September 2016 until the present date.

- 5 -

25.     Plaintiff Javier Flores ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in New York County, New York. Plaintiff Flores has been employed by Defendants from approximately December 2015 until the present date.

26.     Plaintiff Julio Santiago Morales ("Plaintiff Santiago" or "Mr. Santiago") is an adult individual residing in Queens County, New York. Plaintiff Santiago has been employed by Defendants from approximately February 10, 2014 until the present date.

27.     Plaintiff Noel Monroy Alonso ("Plaintiff Monroy" or "Mr. Monroy") is an adult individual residing in Kings County, New York. Plaintiff Monroy was employed by Defendants from approximately September 2016 until on or about February 21, 2017.

28.     Plaintiff Lorenzo Galindo ("Plaintiff Galindo" or "Mr. Galindo") is an adult individual residing in Bronx County, New York. Plaintiff Galindo was employed by Defendants from approximately July 2015 until on or about November 2016.

29.     Plaintiff Salvador Maximiliano Rojas ("Plaintiff Maximiliano" or "Mr. Maximiliano") is an adult individual residing in Bronx County, New York. Plaintiff Maximiliano has been employed by Defendants from approximately May 2015 until the present date.

30.     Plaintiff Sergio Francisco Matias ("Plaintiff Francisco" or "Mr. Francisco") is an adult individual residing in Bronx County, New York. Plaintiff Francisco was employed by Defendants from approximately June 28, 2015 until on or about February 24, 2017.

31.     Plaintiff Oscar Enrique Cosigua Zurec ("Plaintiff Enrique" or "Mr. Enrique") is an adult individual residing in Bronx County, New York. Plaintiff Enrique was employed by Defendants from approximately March 2015 until on or about January 2016.

- 6 -

32.     Plaintiff Roberto Canales ("Plaintiff Canales" or "Mr. Canales") is an adult individual residing in Queens County, New York. Plaintiff Canales was employed by Defendants from approximately March 2014 until on or about September 2015.

33.     Plaintiff Marcos Alcantara ("Plaintiff Alcantara" or "Mr. Alcantara") is an adult individual residing in Bronx County, New York. Plaintiff Alcantara has been employed by Defendants from approximately February 2014 until the present date.

*Defendants*

34.     At all relevant times, Defendants have owned, operated, and/or controlled a vegetarian/health food restaurant located at 78 Fifth Avenue, New York, NY 10011 doing business under the name "Hu Kitchen."

35.     Upon information and belief, Hu Holdings LLC (d/b/a Hu Kitchen) is a restaurant corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 78 Fifth Avenue, New York, NY 10011.

36.     Defendant Jason Karp is an individual engaging in business in this judicial district during the relevant time period.  Defendant Jason Karp is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Jessica Karp is an individual engaging in business in this judicial district during the relevant time period.  Defendant Jessica Karp is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporation.  She possesses or possessed

operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

38.    Defendant Jordan Brown is an individual engaging in business in this judicial district during the relevant time period.  Defendant Jordan Brown is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation.  He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

39.    Defendants own, operate, and/or control a vegetarian/health food restaurant located at 78 Fifth Avenue, New York, NY 10011 under the trade name "Hu Kitchen."

40.    The Individual Defendants Jason Karp, Jessica Karp, and Jordan Brown possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

41.    Defendants possess substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

- 8 -

42.    Defendants employ Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

43.    Upon information and belief, Individual Defendants Jason Karp, Jessica Karp and Jordan Brown operate Defendant Corporation as either an alter ego of themselves, and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things,

   a.    Failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a corporation;

   b.    Defectively forming or maintaining Defendant Corporation by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c.    Transferring assets and debts freely as between all Defendants,

   d.    Operating Defendant Corporation for their own benefit as the sole or majority shareholders,

   e.    Operating Defendant Corporation for their own benefit and maintaining control over this entity as a closed corporation,

   f.    Intermingling assets and debts of their own with Defendant Corporation,

   g.    Diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests, and

   h.    Other actions evincing a failure to adhere to the corporate form.

44.    At all relevant times, Defendants have been Plaintiffs' employer within the meaning of the FLSA and New York Labor Law.  Defendants have the power to hire and fire

Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

45.     In each year from 2012 to the present, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

46.     In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that have been used in the restaurant on a daily basis have been goods produced outside of the State of New York.

*Individual Plaintiffs*

47.     Plaintiffs are current and former employees of Defendants employed as delivery workers.

48.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Andres Fuente Tapia*

49.     Plaintiff Tapia was employed by defendants from approximately September 2015 until on or about February 13, 2017.

50.     Defendants employed Plaintiff Tapia as a delivery worker.

51.     Plaintiff Tapia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

52.     Plaintiff Tapia's work duties required neither discretion nor independent judgment.

53.     From approximately September 2015 until on or about February 13, 2017, Plaintiff Tapia worked a range from about 14 to 31 hours a week and an average of about 24 hours per week.

54.     From approximately September 2015 until on or about February 2017, Defendants paid Plaintiff Tapia $7.50 per hour by check.

55.     Defendants never granted Mr. Tapia break periods of any kind.

56.     However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Tapia's paycheck for meals he infrequently consumed.

57.     Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Tapia's paycheck for meals he infrequently consumed.

58.     From approximately January 2017 until on or about February 13, 2017, defendants deducted $3.80 per day from Plaintiff Tapia's paycheck for meals he infrequently consumed.

59.     Plaintiff Tapia was never notified by Defendants that his tips would be included as an offset for wages.

60.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Tapia's wages.

61.     In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Tapia whenever he delivered catering orders; specifically defendants only paid Plaintiff Tapia $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

62.     No notification, either in the form of posted notices or other means, was ever

given to Plaintiff Tapia regarding wages under the FLSA and NYLL.

63.     Defendants did not give any notice to Plaintiff Tapia, in English and in Spanish (Plaintiff Tapia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

64.     Defendants required Plaintiff Tapia to purchase "tools of the trade" with his own funds—including two bicycles, one helmet, two vests, five sets of lights and two sets of lock and chain.

*Plaintiff Leonardo Conde Rodriguez*

65.     Plaintiff Conde has been employed by defendants from approximately March 2015 until the present date.

66.     Defendants have employed Plaintiff Conde as a delivery worker.

67.     Plaintiff Conde regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

68.     Plaintiff Conde's work duties have required neither discretion nor independent judgment.

69.     From approximately March 2015 until on or about March 2016, Plaintiff Conde worked a range from about 25 to 40 hours a week and an average of about 32 hours per week.

70.     From approximately April 2016 until on or about February 2017, Plaintiff Conde worked a range from about 17 to 36 hours a week and an average of about 33 hours per week.

71.     From approximately February 2017 until the present date, Plaintiff Conde has been working for an average of 28 hours per week.

72.     From approximately March 2015 until the present date, defendants have paid

Plaintiff Conde $7.50 per hour by check.

73.     Defendants have never granted Mr. Conde break periods of any kind.

74.     However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Conde's paycheck for meals he infrequently consumed.

75.     Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Conde's paycheck for meals he infrequently consumed.

76.     From approximately January 2017 until the present date, defendants have deducted $3.80 per day from Plaintiff Conde's paycheck for meals he infrequently consumes.

77.     Plaintiff Conde never has been notified by Defendants that his tips are being included as an offset for wages.

78.     Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Conde's wages.

79.     In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Conde whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Conde $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

80.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Conde regarding overtime and wages under the FLSA and NYLL.

81.     Defendants never have given any notice to Plaintiff Conde, in English and in Spanish (Plaintiff Conde's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

82.     Defendants have required Plaintiff Conde to purchase "tools of the trade" with his own funds—including 2 sets of Breaks, Tires, several  sets of Shoe Breaks, Lock and chain and several sets of Lights.

*Plaintiff Abraham Gutierrez*

83.     Plaintiff Gutierrez was employed by defendants from approximately September 2013 until on or about December 2014.

84.     Defendants employed Plaintiff Gutierrez as a delivery worker.

85.     Plaintiff Gutierrez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

86.     Plaintiff Gutierrez's work duties required neither discretion nor independent judgment.

87.     From approximately September 2013 until on or about December 2014, Plaintiff Gutierrez worked a range from about 12 to 30 hours a week and an average of about 20 hours per week.

88.     From approximately September 2013 until on or about December 2014, defendants paid Plaintiff Gutierrez $7.50 per hour by check.

89.     Defendants never granted Mr. Gutierrez break periods of any kind.

90.     However, defendants deducted $2.50 per day from Plaintiff Gutierrez's paycheck for meals he infrequently consumed.

91.     Plaintiff Gutierrez was never notified by Defendants that his tips were being included as an offset for wages.

92.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gutierrez's wages.

- 14 -

93.     In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Gutierrez whenever he delivered catering orders; specifically defendants only paid Plaintiff Gutierrez $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

94.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gutierrez regarding overtime and wages under the FLSA and NYLL.

95.     Defendants did not give any notice to Plaintiff Gutierrez in English and in Spanish (Plaintiff Gutierrez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

96.     Defendants required Plaintiff Gutierrez to purchase "tools of the trade" with his own funds—including two bicycles.

*Plaintiff Mario Hernandez Reyes*

97.     Plaintiff Hernandez has been employed by defendants from approximately February 2016 until the present date.

98.     Defendants have employed Plaintiff Hernandez as a delivery worker.

99.     Plaintiff Hernandez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

100.     Plaintiff Hernandez's work duties have required neither discretion nor independent judgment.

101.     From approximately February 2016 until on or about January 2017, Plaintiff Hernandez worked an average of approximately 39 hours per week.

- 15 -

102.    From approximately January 2017 until the present date, Plaintiff Hernandez has worked an average of approximately 34 hours per week.

103.    From approximately February 2016 until the present date, defendants have paid Plaintiff Hernandez $7.50 per hour by check.

104.    Defendants never have granted Mr. Hernandez break periods of any kind.

105.    However, from approximately February 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Hernandez's paycheck for meals he infrequently consumed.

106.    Similarly, from approximately January 2017 until the present date, defendants have deducted $3.80 per day from Plaintiff Hernandez's paycheck for meals he infrequently consumes.

107.    Plaintiff Hernandez has never been notified by Defendants that his tips are being included as an offset for wages.

108.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

109.    In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Hernandez whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Hernandez $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

110.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Hernandez regarding wages under the FLSA and NYLL.

111.    Defendants never have given any notice to Plaintiff Hernandez in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day,

and such other information as required by NYLL §195(1).

112.    Defendants have required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including a bicycle and approximately $800 in bike supplies and maintenance.

*Plaintiff Ricardo Trujillo Gomez*

113.    Plaintiff Trujillo was employed by defendants from approximately January 2014 until on or about November 2014.

114.    Defendants employed Plaintiff Trujillo as a delivery worker.

115.    Plaintiff Trujillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

116.    Plaintiff Trujillo's work duties required neither discretion nor independent judgment.

117.    From approximately January 2014 until on or about November 2014, Plaintiff Trujillo worked a range of 19 to 30 hours per week and an average of 24 hours per week.

118.    From approximately January 2014 until on or about November 2014, defendants paid Plaintiff Trujillo $7.50 per hour by check.

119.    Defendants never granted Mr. Trujillo break periods of any kind during his work hours.

120.    However, defendants deducted $2.50 per day from Plaintiff Trujillo's paycheck for meals he infrequently consumed.

121.    Defendants never notified Plaintiff Trujillo that his tips were being included as an offset for wages.

122.    Defendants did not account for these tips in any daily or weekly accounting of

- 17 -

Plaintiff Trujillo's wages.

123.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Trujillo whenever he delivered catering orders; specifically defendants only paid Plaintiff Trujillo $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

124.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Trujillo regarding overtime and wages under the FLSA and NYLL.

125.    Defendants did not give any notice to Plaintiff Trujillo in English and in Spanish (Plaintiff Trujillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

126.    Defendants required Plaintiff Trujillo to purchase "tools of the trade" with his own funds—including a bicycle, a vest, a helmet and approximately $200 in bike maintenance.

*Plaintiff Christian Acajabon*

127.    Plaintiff Acajabon has been employed by defendants from approximately July 2012 until the present date.

128.    Defendants have employed Plaintiff Acajabon as a delivery worker.

129.    Plaintiff Acajabon regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

130.    Plaintiff Acajabon's work duties have required neither discretion nor independent judgment.

131.    From approximately July 2012 until on or about April 2014, Plaintiff Acajabon worked a range from 5 to 15 hours per week and an average of approximately 13 hours per week.

132.    From approximately May 2014 until on or about June 2015, Plaintiff Acajabon worked a range from 22 to 39 hours per week and an average of approximately 30 hours per week.

133.    From approximately June 2015 until on or about April 2016, Plaintiff Acajabon worked a range from approximately 25 to 35 hours per week and an average of 30 hours per week.

134.    From approximately April 2016 until the present date, Plaintiff Acajabon has worked a range from approximately 27 to 35 hours per week and an average of approximately 31 hours per week.

135.    From approximately July 2012 until the present date, defendants have paid Plaintiff Acajabon $7.50 per hour by check.

136.    Defendants have never granted Mr. Acajabon break periods of any kind.

137.    Plaintiff Acajabon never has been notified by Defendants that his tips are being included as an offset for wages.

138.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Acajabon's wages.

139.    In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Acajabon whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Acajabon $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

140.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Acajabon regarding overtime and wages under the FLSA and NYLL.

141.    Defendants never have given any notice to Plaintiff Acajabon, in English and in

Spanish (Plaintiff Acajabon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

142.    Defendants have required Plaintiff Acajabon to purchase "tools of the trade" with his own funds—including 2 sets of Breaks, Tires, several  sets of Shoe Breaks, Lock and chain and  several sets of Lights.

*Plaintiff Victorino Gallardo*

143.    Plaintiff Gallardo has been employed by Defendants from approximately March 2016 until the present date.

144.    Defendants have employed Plaintiff Gallardo as a delivery worker.

145.    Plaintiff Gallardo regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

146.    Plaintiff Gallardo's work duties have required neither discretion nor independent judgment.

147.    From approximately March 2016 until the present date, Plaintiff Gallardo has worked an average of 30 hours per week.

148.    From approximately March 2016 until the present date, defendants have paid Plaintiff Gallardo $7.50 per hour by check.

149.    Defendants never have granted Plaintiff Gallardo break periods of any kind. However, from approximately March 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Gallardo's paycheck for meals he infrequently consumed.

150.    Similarly, from approximately January 2017 until the present date, defendants have deducted $3.80 per day from Plaintiff Gallardo's paycheck for meals he infrequently consumes.

151.    Plaintiff Gallardo never has been notified by Defendants that his tips are being included as an offset for wages.

152.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Gallardo's wages.

153.    In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Gallardo whenever he has delivered catering orders; specifically, defendants only have paid Plaintiff Gallardo $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

154.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Gallardo regarding overtime and wages under the FLSA and NYLL.

155.    Defendants never have given any notice to Plaintiff Gallardo, in English and in Spanish (Plaintiff Gallardo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

156.    Defendants have required Plaintiff Gallardo to purchase "tools of the trade" with his own funds—including, four jackets.

*Plaintiff Abelardo Perez*

157.    Plaintiff Perez was employed by defendants from approximately November 2015 until on or about May 2016.

158.    Defendants employed Plaintiff Perez as a delivery worker.

159.    Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

160.    Plaintiff Perez's work duties required neither discretion nor independent judgment.

- 21 -

161.    From approximately November 2015 until on or about May 2016, Plaintiff Perez worked a range of 25 to 37 hours per week and worked an average of 35 hours per week.

162.    From approximately November 2015 until on or about May 2016, defendants paid Plaintiff Perez $7.50 per hour by check.

163.    Defendants never granted Mr. Perez break periods of any kind.

164.    However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Perez's paycheck for meals he infrequently consumed.

165.    Similarly from approximately January 2016 until on or about May 2016, defendants deducted $3.10 per day from Plaintiff Perez's paycheck for meals he infrequently consumed.

166.    Plaintiff Perez was never notified by Defendants that his tips were being included as an offset for wages.

167.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

168.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Perez whenever he delivered catering orders; specifically defendants only paid Plaintiff Perez $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

169.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

170.    Defendants did not give any notice to Plaintiff Perez in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

171.    Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a safety vest, and a chain.

*Plaintiff Armando Mensinas*

172.    Plaintiff Mensinas was employed by defendants from approximately February 2014 until on or about January 2015.

173.    Defendants employed Plaintiff Mensinas as a delivery worker.

174.    Plaintiff Mensinas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

175.    Plaintiff Mensinas' work duties required neither discretion nor independent judgment.

176.    From approximately February 2014 until on or about January 2015, Plaintiff Mensinas worked a range of approximately 6 to 39 hours per week and worked an average of 27 hours per week.

177.    From approximately February 2014 until on or about January 2015, defendants paid Plaintiff Mensinas $7.50 per hour by check.

178.    Defendants never granted Mr. Mensinas break periods of any kind.

179.    However, from approximately February 2014 until on or about January 2015, defendants deducted $2.50 per day from Plaintiff Mensinas' paycheck for meals he infrequently consumed.

180.    Plaintiff Mensinas was never notified by Defendants that his tips were being included as an offset for wages.

181.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mensinas' wages.

182.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Mensinas whenever he delivered catering orders; specifically defendants only paid Plaintiff Mensinas $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

183.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mensinas regarding overtime and wages under the FLSA and NYLL.

184.    Defendants did not give any notice to Plaintiff Mensinas in English and in Spanish (Plaintiff Mensinas' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

185.    Defendants required Plaintiff Mensinas to purchase "tools of the trade" with his own funds—including three bicycles, a helmet, a bell, tires, and a chain.

*Plaintiff Eduardo Perez Robles*

186.    Plaintiff Robles was employed by defendants from approximately February 2014 until on or about June 2015.

187.    Defendants employed Plaintiff Robles as a delivery worker.

188.    Plaintiff Robles regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

189.    Plaintiff Robles' work duties required neither discretion nor independent judgment.

190.    From approximately February 2014 until on or about June 2015, Plaintiff Robles worked a range of approximately 5 to 40 hours per week and worked an average of 23 hours per week.

191.    From approximately February 2014 until on or about September 2014, defendants paid Plaintiff Robles $7.00 per hour by check.

192.    From approximately September 2014 until on or about June 2015, defendants paid Plaintiff Robles $7.25 per hour by check.

193.    Defendants never granted Mr. Robles break periods of any kind.

194.    However, from approximately February 2014 until on or about June 2015, defendants deducted $2.50 per day from Plaintiff Robles' paycheck for meals he infrequently consumed.

195.    Plaintiff Robles was never notified by Defendants that his tips were being included as an offset for wages.

196.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Robles' wages.

197.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Robles whenever he delivered catering orders; specifically defendants only paid Plaintiff Robles $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

198.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Robles regarding overtime and wages under the FLSA and NYLL.

199.    Defendants did not give any notice to Plaintiff Robles in English and in Spanish (Plaintiff Robles' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

200.    Defendants required Plaintiff Robles to purchase "tools of the trade" with his own funds—including one bicycle.

- 25 -

*Plaintiff Fernando Rios*

201.    Plaintiff Rios has been employed by defendants from approximately September 2016 until the present date.

202.    Defendants have employed Plaintiff Rios as a delivery worker.

203.    Plaintiff Rios regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

204.    Plaintiff Rios' work duties have required neither discretion nor independent judgment.

205.    From approximately September 2016 until the present date, Plaintiff Rios has worked an average of 30 hours per week.

206.    From approximately September 2016 until the present date, defendants have paid Plaintiff Rios $7.50 per hour by check.

207.    Defendants never have granted Mr. Rios break periods of any kind.

208.    However from approximately September 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Rios' paycheck for meals he infrequently consumed.

209.    Similarly, from approximately January 2017 until the present date, defendants have deducted $3.80 per day from Plaintiff Rios' paycheck for meals he infrequently consumes.

210.    Plaintiff Rios has never been notified by Defendants that his tips are being included as an offset for wages.

211.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Rios' wages.

212.    In addition, Defendants have withheld a considerable portion of any tips

- 26 -

customers have paid Plaintiff Rios whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Rios $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

213.   No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Rios regarding wages under the FLSA and NYLL.

214.   Defendants never have given any notice to Plaintiff Rios in English and in Spanish (Plaintiff Rios' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

215.   Defendants have required Plaintiff Rios to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a messenger delivery bag, a vest, one set of lights, and $60 in repairs.

*Plaintiff Javier Flores*

216.   Plaintiff Flores has been employed by defendants from approximately December 2015 until the present date.

217.   Defendants have employed Plaintiff Flores as a delivery worker.

218.   Plaintiff Flores regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

219.   Plaintiff Flores' work duties have required neither discretion nor independent judgment.

220.   From approximately December 2015 until on or about April 2016, Plaintiff Flores worked a range of approximately 12 to 28 hours per week and worked an average of 23 hours per week.

221.    From approximately May 2016 until on or about January 31, 2017, Plaintiff Flores worked a range of approximately 6 to 36 hours per week and worked an average of 29 hours per week.

222.    From approximately February 2017 until the present date, Plaintiff Flores has worked an average of 20 hours per week.

223.    From approximately December 2015 until on or about October 2016, defendants paid Plaintiff Flores $5.50 per hour by check.

224.    From approximately October 2016 until the present date, defendants have paid Plaintiff Flores $7.50 per hour by check.

225.    Defendants have never granted Mr. Flores break periods of any kind.

226.    However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Flores' paycheck for meals he infrequently consumed.

227.    Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Flores' paycheck for meals he infrequently consumed.

228.    From approximately January 2017 to the present date, defendants have deducted $3.80 per day from Plaintiff Flores' paycheck for meals he infrequently consumes.

229.    Plaintiff Flores' has never been notified by Defendants that his tips are being included as an offset for wages.

230.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Flores' wages.

231.    In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Flores whenever he has delivered catering orders; specifically

defendants only have paid Plaintiff Flores $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

232.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Flores regarding wages under the FLSA and NYLL.

233.    Defendants never have given any notice to Plaintiff Flores in English and in Spanish (Plaintiff Flores' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

234.    Defendants have required Plaintiff Flores to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest that was deducted $15 off his paycheck, and one set of lights.

*Plaintiff Julio Santiago Morales*

235.    Plaintiff Santiago has been employed by defendants from approximately February 10, 2014 until the present date.

236.    Defendants have employed Plaintiff Santiago as a delivery worker.

237.    Plaintiff Santiago regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

238.    Plaintiff Santiago's work duties have required neither discretion nor independent judgment.

239.    From approximately February 10, 2014 until on or about January 2015, Plaintiff Santiago worked a range of approximately 14 to 30 hours per week and worked an average of 25 hours per week.

240.    From approximately January 2015 until on or about October 2015, Plaintiff Santiago worked a range of approximately 19 to 33 hours per week and worked an average of 27 hours per week.

241.    From approximately October 2015 until on or about May 2016, Plaintiff Santiago worked a range of approximately 13 to 37 hours per week and worked an average of 28 hours per week.

242.    From approximately May 2016 until on or about June 20, 2016, Plaintiff Santiago worked a range of approximately 25 to 35 hours per week and worked an average of 29 hours per week.

243.    From approximately June 21, 2016 until on or about September 19, 2016, Plaintiff Santiago worked a range of approximately 18 to 30 hours per week and worked an average of 27 hours per week.

244.    From approximately September 20, 2016 until on or about October 15, 2016, Plaintiff Santiago worked a range of approximately 23 to 36 hours per week and worked an average of 32 hours per week.

245.    From approximately October 16, 2016 until on or about February 10, 2017, Plaintiff Santiago worked a range of approximately 26 to 39 hours per week and worked an average of 31 hours per week.

246.    From approximately February 11, 2017 until the present date, Plaintiff Santiago has worked an average of 28 hours per week.

247.    From approximately February 10, 2014 until the present date, defendants have paid Plaintiff Santiago $7.50 per hour by check.

248.    Defendants have never granted Mr. Santiago break periods of any kind.

- 30 -

249.     However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Santiago's paycheck for meals he infrequently consumed.

250.     Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Santiago's paycheck for meals he infrequently consumed.

251.     From approximately January 2017 to the present date, defendants have deducted $3.80 per day from Plaintiff Santiago's paycheck for meals he infrequently consumes.

252.     Plaintiff Santiago has never been notified by Defendants that his tips are being included as an offset for wages.

253.     Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Santiago's wages.

254.     In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Santiago whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Santiago $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

255.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Santiago regarding wages under the FLSA and NYLL.

256.     Defendants never have given any notice to Plaintiff Santiago in English and in Spanish (Plaintiff Santiago's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

257.     Defendants have required Plaintiff Santiago to purchase "tools of the trade" with his own funds—including four bicycles, a helmet, a vest, twelve sets of lights, a bell/ringer, a basket, and a chain and lock.

*Plaintiff Noel Monroy Alonso*

258.    Plaintiff Monroy was employed by defendants from approximately September 2016 until on or about February 21, 2017.

259.    Defendants employed Plaintiff Monroy as a delivery worker.

260.    Plaintiff Monroy regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

261.    Plaintiff Monroy's work duties required neither discretion nor independent judgment.

262.    From approximately September 2016 until on or about February 21, 2017, Plaintiff Monroy worked a range of approximately 4 to 15 hours per week and worked an average of 11 hours per week.

263.    From approximately September 2016 until on or about February 21, 2017, defendants paid Plaintiff Monroy $7.50 per hour by check.

264.    Defendants never granted Mr. Monroy break periods of any kind.

265.    However, from approximately September 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Monroy's paycheck for meals he infrequently consumed.

266.    Similarly, from approximately January 2017 until on or about February 21, 2017, defendants deducted $3.80 per day from Plaintiff Monroy's paycheck for meals he infrequently consumed.

267.    Plaintiff Monroy was never notified by Defendants that his tips were being included as an offset for wages.

268.    Defendants did not account for these tips in any daily or weekly accounting of

Plaintiff Monroy's wages.

269.     In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Monroy whenever he delivered catering orders; specifically defendants only paid Plaintiff Monroy $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

270.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Monroy regarding wages under the FLSA and NYLL.

271.     Defendants never gave any notice to Plaintiff Monroy in English and in Spanish (Plaintiff Monroy's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

272.     Defendants required Plaintiff Monroy to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, one set of lights, and a chain and lock.

*Plaintiff Lorenzo Galindo*

273.     Plaintiff Galindo was employed by defendants from approximately July 2015 until on or about November 2016.

274.     Defendants employed Plaintiff Galindo as a delivery worker.

275.     Plaintiff Galindo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

276.     Plaintiff Galindo's work duties required neither discretion nor independent judgment.

277.     From approximately July 2015 until on or about November 2016, Plaintiff Galindo worked a range of 20 to 30 hours per week and worked an average of 23 hours per week.

- 33 -

278.     From approximately July 2015 until on or about November 2016, defendants paid Plaintiff Galindo $7.50 per hour by check.

279.     Defendants never granted Mr. Galindo break periods of any kind.

280.     However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Galindo's paycheck for meals he infrequently consumed.

281.     Similarly from approximately January 2016 until on or about November 2016, defendants deducted $3.10 per day from Plaintiff Galindo's paycheck for meals he infrequently consumed.

282.     Plaintiff Galindo was never notified by Defendants that his tips were being included as an offset for wages.

283.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Galindo's wages.

284.     In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Galindo whenever he delivered catering orders; specifically defendants only paid Plaintiff Galindo $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

285.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Galindo regarding overtime and wages under the FLSA and NYLL.

286.     Defendants did not give any notice to Plaintiff Galindo in English and in Spanish (Plaintiff Galindo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

287.     Defendants required Plaintiff Galindo to purchase "tools of the trade" with his own funds—including $360 in bicycle maintenance.

*Plaintiff Salvador Maximiliano Rojas*

288.    Plaintiff Maximiliano has been employed by defendants from approximately March 2015 until the present date.

289.    Defendants have employed Plaintiff Maximiliano as a delivery worker.

290.    Plaintiff Maximiliano regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

291.    Plaintiff Maximiliano's work duties have required neither discretion nor independent judgment.

292.    From approximately March 2015 until on or about February 2017, Plaintiff Maximiliano worked a range of approximately 12 to 40 hours per week and worked an average of 22 hours per week.

293.    From approximately February 2017 until the present date, Plaintiff Maximiliano has worked an average of 20 hours per week.

294.    From approximately September 2016 until the present date, defendants have paid Plaintiff Maximiliano $7.50 per hour by check.

295.    Defendants never have granted Mr. Maximiliano break periods of any kind.

296.    However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Maximiliano's paycheck for meals he infrequently consumed.

297.    Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Maximiliano's paycheck for meals he infrequently consumed.

298.    From approximately January 2017 until the present date, defendants have deducted $3.80 per day from Plaintiff Maximiliano's paycheck for meals he infrequently

consumes.

299.    Plaintiff Maximiliano has never been notified by Defendants that his tips are being included as an offset for wages.

300.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Maximiliano's wages.

301.    In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Maximiliano whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Maximiliano $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

302.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Maximiliano regarding wages under the FLSA and NYLL.

303.    Defendants never have given any notice to Plaintiff Maximiliano in English and in Spanish (Plaintiff Maximiliano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

304.    Defendants have required Plaintiff Maximiliano to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, one set of lights, and $300 in repairs three times a year.

*Plaintiff Sergio Francisco Matias*

305.    Plaintiff Francisco was employed by defendants from approximately June 28, 2015 until on or about February 24, 2017.

306.    Defendants employed Plaintiff Francisco as a delivery worker.

307.    Plaintiff Francisco regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

308.     Plaintiff Francisco's work duties required neither discretion nor independent judgment.

309.     From approximately June 28, 2015 until on or about March 2016, Plaintiff Francisco worked a range of approximately 25 to 35 hours per week and worked an average of 29 hours per week.

310.     From approximately April 2016 until on or about February 24, 2017, Plaintiff Francisco worked a range of approximately 15 to 38 hours per week and worked an average of 32 hours per week.

311.     From approximately June 2015 until on or about February 24, 2017, defendants paid Plaintiff Francisco $7.50 per hour by check.

312.     Defendants never granted Mr. Francisco break periods of any kind.

313.     However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Francisco's paycheck for meals he infrequently consumed.

314.     Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Francisco's paycheck for meals he infrequently consumed.

315.     From approximately January 2017 until on or about February 21, 2017, defendants deducted $3.80 per day from Plaintiff Francisco's paycheck for meals he infrequently consumed.

316.     Plaintiff Francisco was never notified by Defendants that his tips were being included as an offset for wages.

317.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Francisco's wages.

318.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Francisco whenever he delivered catering orders; specifically defendants only paid Plaintiff Francisco $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

319.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Francisco regarding overtime and wages under the FLSA and NYLL.

320.    Defendants did not give any notice to Plaintiff Francisco in English and in Spanish (Plaintiff Francisco's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

321.    Defendants required Plaintiff Francisco to purchase "tools of the trade" with his own funds—including $100 in bicycle maintenance.

*Plaintiff Oscar Enrique Cosigua Zurec*

322.    Plaintiff Enrique was employed by defendants from approximately March 2015 until on or about January 2016.

323.    Defendants employed Plaintiff Enrique as a delivery worker.

324.    Plaintiff Enrique regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

325.    Plaintiff Enrique's work duties required neither discretion nor independent judgment.

326.    From approximately March 2015 until on or about October 2015, Plaintiff Enrique worked a range of 30 to 40 hours per week and worked an average of 35 hours per week.

327.    From approximately November 2015 until on or about January 2016, Plaintiff Enrique worked a range of 17 to 42 hours per week and an average of 34 hours per week.

328.    From approximately March 2015 until on or about January 3, 2016, defendants paid Plaintiff Enrique $5.35 per hour by check.

329.    From approximately January 4, 2016 until on or about January 31, 2016, defendants paid Plaintiff Enrique $7.50 per hour by check.

330.    Defendants never granted Mr. Enrique break periods of any kind.

331.    However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Enrique's paycheck for meals he infrequently consumed.

332.    Similarly during the month of January 2016, defendants deducted $3.10 per day from Plaintiff Enrique's paycheck for meals he infrequently consumed.

333.    Plaintiff Enrique was never notified by Defendants that his tips were being included as an offset for wages.

334.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Enrique's wages.

335.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Enrique whenever he delivered catering orders; specifically defendants only paid Plaintiff Enrique $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

336.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Enrique regarding overtime and wages under the FLSA and NYLL.

337.    Defendants did not give any notice to Plaintiff Enrique in English and in Spanish (Plaintiff Enrique's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

338.    Defendants required Plaintiff Enrique to purchase "tools of the trade" with his

own funds—including one bicycle, one helmet, one vest, one lock, and a set of lights.

*Plaintiff Roberto Canales*

339.    Plaintiff Canales was employed by defendants from approximately March 2014 until on or about September 2015.

340.    Defendants employed Plaintiff Canales as a delivery worker.

341.    Plaintiff Canales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

342.    Plaintiff Canales' work duties required neither discretion nor independent judgment.

343.    From approximately March 2014 until on or about September 2015, Plaintiff Canales worked a range of approximately 5 to 40 hours per week and worked an average of 23 hours per week.

344.    From approximately March 2014 until on or about September 2015, defendants paid Plaintiff Canales $7.50 per hour by check.

345.    Defendants never granted Mr. Canales break periods of any kind.

346.    However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Canales' paycheck for meals he infrequently consumed.

347.    Plaintiff Canales was never notified by Defendants that his tips were being included as an offset for wages.

348.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Canales' wages.

349.    In addition, Defendants withheld a considerable portion of any tips customers paid Plaintiff Canales whenever he delivered catering orders; specifically defendants only paid

Plaintiff Canales $10 in tips whenever he delivered a catering order and the manager kept the rest of the tip.

350.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Canales regarding overtime and wages under the FLSA and NYLL.

351.    Defendants did not give any notice to Plaintiff Canales in English and in Spanish (Plaintiff Canales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

352.    Defendants required Plaintiff Canales to purchase "tools of the trade" with his own funds—including a bicycle, a helmet two chains, two locks, special rain pants, a raincoat and $200 in bicycle repairs.

*Plaintiff Marcos Alcantara*

353.    Plaintiff Alcantara has been employed by defendants from approximately February 2014 until the present date.

354.    Defendants have employed Plaintiff Alcantara as a delivery worker.

355.    Plaintiff Alcantara regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

356.    Plaintiff Alcantara's work duties have required neither discretion nor independent judgment.

357.    From approximately February 2014 until on or about August 2014, Plaintiff Alcantara worked a range of 10 to 20 hours per week and average of 12 hours per week.

358.     From approximately August 2014 until on or about September 2016, Plaintiff Alcantara worked a range of 20 to 35 hours per week and an average of 27 hours per week.

- 41 -

359.    From approximately September 2016 until on or about February 2017, Plaintiff Alcantara worked a range of 15 to 42 hours per week and average of 35 hours per week.

360.    From approximately February 2017 until the present date, Plaintiff Alcantara has worked an average of 30 hours per week.

361.    From approximately February 2014 until the present date, defendants have paid Plaintiff Alcantara $7.50 per hour by check.

362.    Defendants never have granted Mr. Alcantara break periods of any kind.

363.    However, prior to 2016, defendants deducted $2.50 per day from Plaintiff Alcantara's paycheck for meals he infrequently consumed.

364.    Similarly from approximately January 2016 until on or about December 2016, defendants deducted $3.10 per day from Plaintiff Alcantara's paycheck for meals he infrequently consumed.

365.    From approximately January 2017 until the present date, defendants have deducted $3.80 per day from Plaintiff Alcantara's paycheck for meals he infrequently consumes.

366.    Plaintiff Alcantara has never been notified by Defendants that his tips are being included as an offset for wages.

367.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Alcantara's wages.

368.    In addition, Defendants have withheld a considerable portion of any tips customers have paid Plaintiff Alcantara whenever he has delivered catering orders; specifically defendants only have paid Plaintiff Alcantara $10 in tips whenever he has delivered a catering order and the manager has kept the rest of the tip.

369.    No notification, either in the form of posted notices or other means, has ever been

given to Plaintiff Alcantara regarding wages under the FLSA and NYLL.

370.    Defendants never have given any notice to Plaintiff Alcantara in English and in Spanish (Plaintiff Alcantara's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

371.    Defendants have required Plaintiff Alcantara to purchase "tools of the trade" with his own funds—including two bicycles, a vest, a lock and chain, and $200 in repairs.

*Defendants' General Employment Practices*

372.    Defendants regularly have required Plaintiffs to work without paying them the proper minimum wages.

373.    Defendants have maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work without paying them appropriate minimum wage, as required by federal and state laws.

374.    At no time have Defendants inform Plaintiffs that they have reduced their hourly wage by a tip allowance.

375.    Defendants have failed to inform Plaintiffs that they intend to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

376.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly have harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice has included depriving delivery workers of a portion of the tips earned during the course of employment.

377.   Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

378.   Defendants have failed to inform Plaintiffs that their tips are being credited towards the payment of the minimum wage.

379.   Defendants have failed to maintain a record of tips earned by Plaintiffs for the deliveries they make to customers.

380.   Defendants have failed to post required wage and hour posters in the restaurant/shop, and have not provided Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' lack of sophistication in wage and hour laws.

381.   Defendants have employed Plaintiffs as delivery workers and have required them to provide their own locks, chains and bicycles, and refused to compensate them or reimburse them for these expenses.

382.   Defendants have failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

383.     Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

384.     Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period"), as employees of Hu Kitchen (the "FLSA and Rule 23 Class"). and Rule 23 class Period

385.     At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at the proper minimum wage rate and willfully failing to keep records required by the FLSA.

386.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

387.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

388.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

389.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

390.    There are questions of law and fact common to the Class including:

a.    what proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.    what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.    what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.    whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e.      whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f.      at what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

g.      what are the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

391.     The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members have been subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of minimum wage, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

392.     The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

393.     The common questions of law and fact predominate over questions affecting only individual members.

394.     A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against

corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

395.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

396.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

397.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for their employment.

398.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

399.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

400.    Defendants have failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

401.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

402.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

403.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

404.     At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

405.     Defendants have had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

406.     Defendants, in violation of the NYLL, have paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

407.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) minimum wage IS willful within the meaning of N.Y. Lab. Law § 663.

408.     Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (VIOLATION OF THE NOTICE AND RECORDKEEPING
## REQUIREMENTS OF THE NEW YORK LABOR LAW)

409.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

410.     Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

- 49 -

411.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorney's fees.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

412.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

413.     Defendants have not provided Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

414.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorney's fees.

## FIFTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

415.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

416.     Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

417.     Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE TIP WITHHOLDING PROVISIONS OF THE NEW YORK LABOR LAW)

418.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

419.     Defendants unlawfully and without permission from Plaintiffs have misappropriated and have withheld gratuities paid by customers which should have been retained by Plaintiffs.

420.   Defendants' action have violated NYLL §196-d.

421.   Defendants are liable to Plaintiffs in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)   Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)   Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(d)   Declaring that Defendants' violation of the provisions of the FLSA Are willful as to Plaintiffs and the FLSA and Rule 23 class members;

(e)   Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)   Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages

in an amount equal to 100% of their damages for the amount of unpaid minimum wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)    Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(i)    Declaring that Defendants' violations of the New York Labor Law Are willful as to Plaintiffs;

(j)    Awarding Plaintiffs damages for the amount of unpaid minimum and damages for any improper deductions or credits taken against wages under the NYLL as applicable;

(k)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)    Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(n)     Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorney's fees;

(o)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

    (p)    All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:    New York, New York
           March 17, 2017

                                MICHAEL FAILLACE & ASSOCIATES, P.C.

                By:        /s/ Michael Faillace
                        Michael Faillace [MF-8436]

                    MICHAEL FAILLACE & ASSOCIATES, P.C.
                    Michael A. Faillace [MF-8436]
                    60 East 42nd Street, Suite 2540
                    New York, New York 10165
                    Telephone:    (212) 317-1200
                    Facsimile:     (212) 317-1620
                    *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

---

Faillace@employmentcompliance.com

February 14, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Andres Fuente-Tapia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               14 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 16, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Leonardo Conde Rodriguez

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           16 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 17, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Abraham Gutierrez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:                _Abraham Gutierrez_

Date / Fecha:                     17 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 16, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Mario Hernandez Reyes

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           16 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 17, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Ricardo Trujillo Gomez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     17 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 20, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Christian Acajabon

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      Christian Acajabon

Date / Fecha:                                   20 de febrero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 16, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Victorino Gallardo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     16 de febrero de 2017

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          **Abelardo Perez**

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                           22 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Armando Mensinas

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           22 de febrero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Eduardo Perez Robles

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        22 de febrero de 2017

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                                   Fernando Rios

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:                                *Fernando Rios*

Date / Fecha:                                        22 de febrero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                          Javier Flores

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           22 de febrero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 21, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Julio Santiago Morales

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     21 de febrero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Noe Monroy Alonso

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     22 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Lorenzo Galindo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                *Lorenzo Galindo*

Date / Fecha:                     27 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

February 22, 2017

BY HAND


TO:    Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Salvador Maximiliano Rojas Rojas


Legal Representative / Abogado:   Michael Faillace & Associates, P.C.


Signature / Firma:


Date / Fecha:                     22 de febrero de 2017


*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 27, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Sergio Francisco Matias

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               27 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 2, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Oscar Enrique Cosigua Tzurec

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    02 de marzo de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

March 6, 2017

BY HAND


TO:     Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Roberto Perez Canales


Legal Representative / Abogado:          Michael Faillace & Associates, P.C.


Signature / Firma:


Date / Fecha:                    06 de marzo de 2017


*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 2, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Marcos Alcantara

Legal Representative / Abogado:             Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               02 de marzo de 2017