0UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRES FUENTE TAPIA, LEONARDO CONDE RODRIGUEZ, ABRAHAM GUTIERREZ, MARIO HERNANDEZ REYES, RICARDO TRUJILLO GOMEZ, CHRISTIAN ACAJABON, VICTORINO GALLARDO, ABELARDO PEREZ, ARMANDO MENSINAS, EDUARDO PEREZ ROBLES, FERNANDO RIOS, JAVIER FLORES, JULIO SANTIAGO MORALES, NOEL MONROY ALONSO, LORENZO GALINDO, SALVADOR MAXIMILIANO ROJAS, SERGIO FRANCISCO MATIAS, OSCAR ENRIQUE COSIGUA ZUREC, ROBERTO CANALES and MARCOS ALCANTARA *individually and on behalf of others similarly situated*, | **ECF Case**<br><br>**No. 17-cv-1980 (JPO)** |

Plaintiffs,

-against-

HU HOLDINGS LLC (d/b/a HU KITCHEN), JASON KARP, JESSICA KARP and JORDAN BROWN,

Defendants.

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Plaintiffs Andres Fuente Tapia, Leonardo Conde Rodriguez, Abraham Gutierrez, Mario Hernandez Reyes, Ricardo Trujillo Gomez, Christian Acajabon, Victorino Gallardo, Abelardo Perez, Armando Mensinas. Eduardo Perez Robles, Fernando Rios, Javier Flores, Julio Santiago Morales, Noel Monroy Alonso, Lorenzo Galindo, Salvador Maximiliano Rojas, Sergio Francisco Matias, Oscar Cosigua Zurec, Roberto Canales, Marcos Alcantara, and opt-in plaintiff Alejandro Garcia, on behalf of themselves and all of their heirs, executors, administrators, attorneys, and assigns (collectively "Plaintiffs"), and defendants Hu Holdings LLC d/b/a Hu Kitchen ("Hu Holdings"), Jason Karp, Jessica Karp, and Jordan Brown (collectively "Defendants," and with Plaintiffs, the "Parties") hereby agree upon this Settlement Agreement and General Release ("Agreement") as a resolution of all issues involved herein as follows:

1.     **Preliminary Matters**.  Plaintiffs have reviewed the terms of this Agreement, have had the opportunity to confer with their legal counsel, including Michael Faillace, Esq. and Colin Mulholland, Esq. of Michael Faillace & Associates, P.C. (hereinafter "Plaintiffs' Counsel"), and/or other advisors of their own choosing in order to obtain advice with respect to the terms of this Agreement.  The Parties participated in arms-length settlement negotiations, including attendance at a settlement conference held by Hon. Magistrate Judge Henry Pitman on September 14, 2017, and Plaintiffs exchanged detailed damages calculations prior to reaching a final settlement amount. Prior to signing this Agreement, Plaintiffs have had the opportunity to consider their counsels'

-1-

advice with respect to the foregoing and following Agreement. Plaintiffs enter into this Agreement voluntarily and with a full understanding of its terms, after it has been translated into Plaintiffs' primary language(s) by Plaintiffs' Counsel.

2.     **No Admission of Liability**. The Parties hereto recognize and agree that Defendants do not admit, and expressly deny, any violation of law or any liability to Plaintiffs or to anyone else as a result of or growing out of the matters set forth in the litigation styled *Tapia, et al. v. Hu Holdings, LLC et al.*, Civil Action No. 17-cv-1980 (JPO), filed in the United States District Court for the Southern District of New York (the "Pending Action"), or which could have been raised in such suit, or which otherwise involve Plaintiffs' employment relationships with Defendants and the separation or termination of Plaintiffs' employment relationships with Defendants.

3.     **Dismissal of Pending Action**. For and in consideration of the promises outlined in this Agreement, the sufficiency of which Plaintiffs acknowledge, Plaintiffs agree: (1) to dismiss with prejudice, or cause to be dismissed with prejudice, the Pending Action, including but not limited to any claims held by any opt-in Plaintiffs; (2) not to re-file the causes of action asserted in the Pending Action or any other causes of action against Releasees arising from employment-related or other matters that were encompassed or could have been encompassed or raised in the Pending Action; and (3) not to institute any action against any Releasees in any court or other forum based on allegations or claims existing prior to the date of this Agreement that are released as set forth in this Agreement. The Parties expressly authorize their counsel to submit any papers to the Court that are necessary to effectuate the dismissal of the Pending Action, approval of this Agreement as fair and reasonable, and a full release of Plaintiffs' claims as specified herein. Plaintiffs will not be considered a prevailing party or parties.

4.     **Consideration**.

A.     Hu Holdings agrees to pay Plaintiffs and their attorneys the maximum total sum of One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00) as set forth and allocated in Section 7 below and Exhibit A hereto (hereinafter the "Settlement Payment"), and other good and valuable consideration as described below. Under no circumstances shall the Settlement Payment exceed One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00), excluding the employer's share of payroll taxes typically borne by an employer with respect to any payments made to Plaintiffs on a W-2 basis.

B.     The Parties acknowledge and agree that the Settlement Payment includes attorneys' fees, costs, penalties and liquidated damages. The Parties agree that Plaintiffs' Counsel may petition the Court for approval of attorneys' fees and costs. If approved by the Court, these fees and costs shall come out of the Settlement Payment. Defendants will not oppose this application for attorneys' fees and/or costs, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Payment. The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Pending Action. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's final approval and dismissal with prejudice of the Pending Action.

51254988

C.      Plaintiffs agree that they have no entitlement to any wages, compensation, bonuses, commissions, gratuities, payouts, severance pay, vacation pay, or other benefits, damages, attorneys' fees or costs from Releasees (as defined below), except as specifically provided in this Settlement Agreement.

5.      **Mutual Releases**

A.      **General Release by Plaintiffs.** In consideration of the promises, payments and actions of Defendants set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, Plaintiffs, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, fully and forever release, relieve, waive, relinquish, and discharge Defendants, Defendants' subsidiaries (including but not limited to any grandchild entities, great grandchild entities, and so on), parents (including but not limited to any grandparent entities, great grandparent entities, and so on), direct or indirect shareholders or members of Hu Holdings or Hu Master Holdings, LLC, and each of their respective affiliates, successors, related entities, assigns, heirs, executors, trustees, administrators, and attorneys, and all of their present and former directors, officers, partners, members, shareholders, representatives, attorneys, and insurers (collectively "Releasees") from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which they had, now have or hereafter can, shall or may have against Releasees, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing from the beginning of the world through the date Plaintiffs execute this Agreement, including but not limited to: (i) claims arising directly or indirectly from Plaintiffs' association, employment, and/or engagement with any of the Releasees, whether as independent contractors, employees, or otherwise, and/or the termination of that association, employment, and/or engagement; (ii) claims arising directly or indirectly from the actions or inaction of Releasees; (iii) claims under federal, state or local laws, statutes, constitutions, regulations, rules, ordinances or orders, including, but not limited to, claims under the New York Labor Law, the Wage Theft Prevention Act, the New York Hospitality Industry Wage Order, New York Wage Order for Miscellaneous Industries and Occupations, the New York Restaurant Industry Wage Order, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, the Equal Pay Act, the Immigration Reform and Control Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Credit Reporting Act, the Sarbanes Oxley Act, the Occupational Safety and Health Act, the Family and Medical Leave Act, the New York Corrections Law, the New York State Human Rights Law, the New York City Human Rights Law, each as amended, or any other federal, state, and/or local law; (iv) claims for minimum wages, overtime, commissions, and/or unpaid wages, compensation, and/or other remuneration, whether based on common law or otherwise, which specifically includes all claims for unpaid overtime, improper deductions, travel time, spread of hours pay, bonuses, penalties, expense reimbursements, gratuities, fees, tip credits, tip allowances, service charges, retained gratuities, call-in pay, tools-of-the-trade, and/or meal credits during Plaintiffs' employment with any of the Releasees and/or other compensation, wages, or benefits including, but not limited to, life insurance, accidental death and disability insurance, sick leave, or other employer provided plan or program, distributions of income or profit, vacation or other leave time, retirement,

-3-

pension, the use of information obtained by Releasees as a result of the offering of group health insurance coverage and/or any related penalties, damages, liquidated damages and attorneys' fees under federal, state and/or local law; and (v) any other claim, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of the execution of the Agreement, including, but not limited to, all claims asserted in the Pending Action.  This release is limited solely and only to claims that have arisen on, or prior to, the date this Agreement is executed and transmitted to counsel for Defendants and it does not release or discharge any claims that may occur after that date.  The only exclusions from this release provision are claims for unemployment insurance and workers' compensation. Plaintiffs hereby specifically acknowledge that this Agreement, and the monies received by Plaintiffs and referenced herein, are a fair and reasonable resolution of a bona fide dispute over a provision of the Fair Labor Standards Act and/or for time worked.

Nothing in this Agreement shall infringe on Plaintiffs' ability to testify, assist or participate in an investigation, hearing or proceeding conducted by or to file a charge or complaint of discrimination with the National Labor Relations Board, U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge or complaint, issuing a determination, filing a lawsuit in federal or state court in their own name, or taking any other action authorized by law. However, Plaintiffs are precluded from receiving compensation as a result of any such action.

B.    **General Release by Defendants.**  Defendants agree to, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, fully and forever release, relieve, waive, relinquish, and discharge Plaintiffs from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which they had, now have or hereafter can, shall or may have against Plaintiffs.

6.    **Plaintiffs' Responsibility for Taxes**. Plaintiffs assume full responsibility for their respective portions of the Settlement Payment of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid by Plaintiffs under any federal, state, or municipal laws of any kind, with respect to the monies paid by Hu Holdings to Plaintiffs and/or Plaintiffs' Counsel pursuant to this Agreement.  Indeed, although the parties believe, in good faith, that the tax treatment of the Settlement Payment referenced in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any Plaintiff and/or any Defendant is liable for any failure by any Plaintiff or Plaintiffs' Counsel to pay federal, state or local income or employment taxes with respect to the Settlement Payment set forth in this Agreement, or liable for interest or penalties related thereto, that Plaintiff agrees to indemnify and hold Releasees harmless for any and all such liability.

51254988

7.    **Payment**.

A.    In consideration of the promises of Plaintiffs set forth herein, Hu Holdings shall issue the Settlement Payment set forth in Section 4 as a full and complete settlement and final satisfaction of any and all claims that Plaintiffs have or may have against Releasees, through the date of execution of this Agreement, as well as any claim for attorneys' fees and costs.   The Settlement Payment shall be due and payable, in accordance with the allocations to each Plaintiff and Plaintiffs' counsel set forth in Exhibit A, to Plaintiffs' Counsel no later than the latter of the following dates, *whichever occurs last*:

(i)    thirty (30) days after Plaintiffs have executed this Agreement and delivered the same to Defendants' counsel at Fox Rothschild LLP (Attn: Zev Singer), 101 Park Avenue, Suite 1700, New York, New York 10178;

(ii)    thirty (30) days after Plaintiffs' Counsel has executed and delivered to counsel for Defendants a valid IRS Form W-9; and/or

(iii)    thirty (30) days after the Court both approves this Agreement as a fair and reasonable resolution of a bona fide dispute over a provision of the Fair Labor Standards Act, in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016), and fully and finally dismisses the Pending Action with prejudice.

B.    To the extent any Settlement Payment due date above falls on a weekend or court holiday, the date such payment shall be due will be the next business day that is not a weekend or court holiday. Nothing contained in this Agreement shall preclude or limit Hu Holdings' right to make prepayment of any settlement amounts set forth in this Agreement without penalty.

C.    In no event shall any settlement payment under Sections 4, 7,  and Exhibit A of this Agreement be due until the Court fully and finally dismisses the Pending Action and this Agreement has been approved as a fair and reasonable resolution of a bona fide dispute over a provision of the Fair Labor Standards Act.  Moreover, in no event shall any settlement payment under Sections 4, 7, and Exhibit A of this Agreement be due or payable if any Plaintiff revokes this Agreement pursuant to Section 18.   The Parties agree that Plaintiffs shall submit this Agreement to the Court for its inspection and approval as a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act and in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016). Defendants shall be allowed to first review and comment on Plaintiffs' approval application prior to its submission to the Court, as well as submit its own submission if appropriate.

D.    The Parties agree that the individual settlement payments made to the Plaintiffs (excluding any approved attorneys' fees and costs) will be allocated as follows for tax purposes: (i) one-third (1/3) in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting and payable directly in the name of each Plaintiff, and (ii) two-thirds (2/3) in consideration for liquidated damages, penalties, and interest as non-wage payments

subject to 1099 reporting and payable to "Michael Faillace & Associates, P.C. *as attorneys for* [Each Plaintiff]." All Wage Payments (i.e., the portion set forth in Section 7(D)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. All Non-Wage Payments (i.e., the portion set forth in Section 7(D)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 that shall be issued. Payments of any approved attorneys' fees and costs pursuant to this Agreement shall also be made without any withholdings and shall be reflected on a Form 1099 that shall be issued. Hu Holdings shall make all payments using the last tax documents submitted by Plaintiffs while employed with any of the Defendants. To the extent additional tax documentation is required in order to lawfully make payment to any Plaintiff, Hu Holdings shall request from Plaintiffs' counsel, and that Plaintiff or those Plaintiffs shall provide, valid tax documents allowing Hu Holdings to lawfully make the individual Settlement Payment(s) to him, her, or them, including but not limited to IRS Forms W-4 and W-9. No Settlement Payment shall be due until after valid tax documents have been provided for all Plaintiffs.

8.    **Governing Law.**  The rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to principles of conflict of laws.  Venue for any dispute between the parties shall lie in the United States District Court for the Southern District of New York, or the New York State Supreme Court, New York County.  However, if the District Court should refuse or decline to accept jurisdiction over the settlement for any reason, the Parties agree that this Agreement may be enforced in a court of competent jurisdiction located in New York County, New York.  The District Court's refusal to retain jurisdiction over the settlement shall not void or otherwise affect this Agreement.  If any provision is determined by a court of competent jurisdiction to be invalid or unenforceable (other than Section 5(A), is to which all monies paid hereunder must be returned to Hu Holdings if found to be invalid or unenforceable), the remaining provisions shall continue in full force and effect notwithstanding.  Plaintiffs acknowledge that they have not previously transferred, assigned or conveyed any right or claim released in this Agreement.  The headings used herein are for reference only and shall not in any way affect the meaning or interpretation of this Agreement.

9.    **Communications with the Media.**  Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including but not limited to Facebook, LinkedIn and Twitter, (collectively, the "Media") regarding the Litigation, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same.  If contacted by any member of the Media or any other individuals through any of the Media, Plaintiffs and/or Plaintiffs' Counsel will simply state that the Litigation has been resolved to the satisfaction of the parties.  Notwithstanding the terms of this paragraph, the Parties shall be free to make whatever disclosures they deem appropriate to their attorneys and financial and tax advisors, as well as, in Defendants' case, to its, and its affiliates' respective members, officers, shareholders, directors, and/or other relevant stake holders as well as their attorneys and financial and tax advisors.  Nothing herein shall prevent Plaintiffs' Counsel, Plaintiffs, Defendants' Counsel, and/or Defendants from discussing their experiences in this case with third-parties other than the media.  Nor shall anything herein prevent Plaintiffs' Counsel, Plaintiffs, Defendants'

Counsel, and/or Defendants from discussing their experience litigating this case by non-public "direct message" or "private message" with individuals unaffiliated with any electronic, print, or digital media, or blog, using social networking sites, including but not limited to Facebook, LinkedIn and Twitter.

10.    **Status of Settlement If Case Is Not Ultimately Dismissed**. In the event the Court fails to dismiss the Pending Action with prejudice as contemplated by this Agreement, this Agreement shall be null and void *ab initio*. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution date of this Agreement, and the Parties shall proceed in all respects as if the Agreement had not been executed.

11.    **Important Acknowledgments**. It is further understood and agreed that the Settlement Payment and the other good and valuable consideration provided for herein, are not a mere recital but are the consideration for this Agreement and all terms herein, and the full and final release effected thereby. The Parties represent and warrant that the Settlement Payment is fair and reasonable. The Parties represent and warrant that they are entering into this Agreement of their own free will, and accord after consultation with their attorneys, and with authority to enter into this Agreement. The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

12.    **No Other Representations or Agreements**. Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or parties, agents, representatives, or attorneys, to induce the execution of this Agreement.    This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto.  There is no other agreement or understanding, written or oral, expressed or implied, among the parties hereto concerning the subject matter hereof, except the agreements set forth in this Agreement.  This Agreement constitutes and contains the entire agreement among the parties, and supersedes and replaces all prior negotiations and all agreements, proposed or otherwise, written or oral, concerning the subject matter hereof.

13.    **No Modification Except In Writing**. This Agreement cannot be modified or changed except by a writing, signed by the parties, with specific reference to this Agreement.

14.    **Successors and Assigns.** This Agreement will apply to, be binding in all respects upon and inure to the benefit of the respective successors and assigns of the Parties, including their personal representatives, administrators, executors, heirs and others taking from them; provided, however, that no party may delegate or avoid any of its liabilities, obligations or responsibilities under this Agreement.

15.    **Execution In Counterpart and Facsimile Signatures**. This Agreement may be executed in counterpart by each party and each executed Agreement, when taken together, shall constitute a complete Agreement.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

51254988

16.     **Knowing and Voluntary Release of Claims.**   Plaintiffs acknowledge that:

A.     Plaintiffs have carefully read this Settlement Agreement and they fully understand its meaning;

B.     Plaintiffs have been advised that an individual waiving rights under the Age Discrimination in Employment Act ("ADEA") is entitled to a minimum of 21 days within which to consider this agreement and release, and therefore Plaintiffs acknowledge that they have 21 days from the date of receiving this Settlement Agreement, which contains a release of ADEA claims, to return the signed Settlement Agreement and release.  Plaintiffs acknowledge that they may execute and return this agreement and release earlier if they so decide, and that by executing and returning this agreement and release during the 21 day period, they will waive any right to consider the agreement and release for the 21 day period.  Plaintiffs acknowledge that they have been further advised that they may consult with an attorney or other adviser of their choosing prior to making the decision to execute and return this Settlement Agreement.

C.     Defendants hereby advise Plaintiffs in writing that Plaintiffs should consult with an attorney before signing the Settlement Agreement, and Plaintiffs acknowledge that they have in fact consulted with an attorney regarding this Agreement, or that they have waived this right.

D.     Plaintiffs are signing this Agreement, knowingly, voluntarily, and without any coercion or duress; and

E.     Everything Plaintiffs are receiving for signing this Agreement is described in the Agreement itself, and no other promises or representations have been made to cause Employee to sign it.

17.     **Revocation.**  Plaintiffs understand and agree that they have a period of seven (7) days following the signing of this Agreement to revoke it.  Plaintiffs understand that in the event that any Plaintiff revokes this Agreement, the entire Agreement shall be null and void and of no force or effect on either party and therefore Hu Holdings will be under no obligation to make the payments set forth in Sections 4, 7, and Exhibit A.  In order to revoke this Agreement, the Plaintiff wishing to do so must sign and send a written notice of the decision to do so, addressed to Fox Rothschild LLP (Attn: Zev Singer), 101 Park Avenue, Suite 1700, New York, New York 10178, and the written notice must be received by Defendants no later than the eighth day after Employee signed this Agreement.  Plaintiffs further understand that this Settlement Agreement shall not be effective or enforceable until the day after the seven (7) day revocation period has expired and provided that no Plaintiff exercises his or her right to revoke this Settlement Agreement.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officer, representative, or attorney to execute, this Agreement.

<u>**PLAINTIFFS:**</u>

_____ Date: October 18, 2017
**ANDRES FUENTE TAPIA**

_____ Date: October 18, 2017
**LEONARDO CONDE RODRIGUEZ**

_____ Date: October 18, 2017
**ABRAHAM GUTIERREZ**

_____ Date: October 18 2017
**MARIO HERNANDEZ REYES**

_____ Date: October 18, 2017
**RICARDO TRUJILLO GOMEZ**

Christian Acajabon    Date: October __, 2017
**CHRISTIAN ACAJABON**

_____ Date: October 18, 2017
**VICTORINO GALLARDO**

Abelardo Perez    Date: October 18, 2017
**ABELARDO PEREZ**

_____ Date: October 18 2017
**ARMANDO MENSINAS**

_____ Date: October 18, 2017
**EDUARDO PEREZ ROBLES**

Fernando Rios  Date: October 18, 2017
**FERNANDO RIOS**

Javier Flores  Date: October 18 2017
**JAVIER FLORES**

_____ Date: October 18, 2017
**JULIO SANTIAGO MORALES**

Noel Monroy Alonso O.  Date: October 20, 2017
**NOEL MONROY ALONSO**

51254988

_____ Date: October 18, 2017
**LORENZO GALINDO**

_____ Date: October 18, 2017
**SALVADOR MAXIMILIANO ROJAS**

_____ Date: October 18, 2017
**SERGIO FRANCISCO MATIAS**

_____ Date: October 19, 2017
**OSCAR COSIGUA ZUREC**

_____ Date: October 19, 2017
**ROBERTO CANALES**

_____ Date: October 18, 2017
**MARCOS ALCANTARA**

_____ Date: October 18, 2017
**ALEJANDRO GARCIA**


**DEFENDANTS:**

By: _____ Date: October 31, 2017
     **HU HOLDINGS, LLC**

_____ Date: October 31, 2017
**JASON KARP**

_____ Date: October 31, 2017
**JESSICA KARP**

_____ Date: October 31, 2017
**JORDAN BROWN**

-10-

# EXHIBIT A

## TOTAL INDIVIDUAL SETTLEMENT ALLOCATIONS

| Name | Total Individual Settlement Payments | Settlement Check 1<br>Net Amount Paid by 1099 to "Michael Faillace & Associates, P.C. As Attorneys for [Plaintiff]" (without tax withholdings) | Settlement Check 2<br>Gross Amount Paid by W-2 to each Plaintiff (less all applicable tax withholdings) |
|---|---|---|---|
| ANDRES FUENTE TAPIA | $4,388.53 | $2,940.32 | $1,448.21 |
| LEONARDO CONDE RODRIGUEZ | $6,202.46 | $4,155.65 | $2,046.81 |
| ABRAHAM GUTIERREZ | $4,037.45 | $2,705.09 | $1,332.36 |
| MARIO HERNANDEZ REYES | $3,452.31 | $2,313.05 | $1,139.26 |
| RICARDO TRUJILLO GOMEZ | $2,808.66 | $1,881.80 | $926.86 |
| CHRISTIAN ACAJABON | $14,335.87 | $9,605.03 | $4,730.84 |
| VICTORINO GALLARDO | $3,218.26 | $2,156.23 | $1,062.03 |
| ABELARDO PEREZ | $1,813.93 | $1,215.33 | $598.60 |
| ARMANDO MENSINAS | $3,042.72 | $2,038.62 | $1,004.10 |
| EDUARDO PEREZ ROBLES | $4,271.50 | $2,861.90 | $1,409.60 |
| FERNANDO RIOS | $1,638.39 | $1,097.72 | $540.67 |
| JAVIER FLORES | $3,861.91 | $2,587.48 | $1,274.43 |
| JULIO SANTIAGO MORALES | $9,479.23 | $6,351.08 | $3,128.15 |
| NOEL MONROY ALONSO | $1,404.33 | $940.90 | $463.43 |
| LORENZO GALINDO | $4,330.02 | $2,901.11 | $1,428.91 |
| SALVADOR MAXIMILIANO ROJAS | $6,202.46 | $4,155.65 | $2,046.81 |
| SERGIO FRANCISCO MATIAS | $5,090.70 | $3,410.77 | $1679.93 |
| OSCAR ENRIQUE COSIGUA ZUREC | $2,808.66 | $1,881.80 | $926.86 |
| ROBERTO CANALES | $4,856.64 | $3,253.94 | $1,602.70 |
| MARCOS ALCANTARA | $9,420.71 | $6,311.88 | $3,108.83 |
| ALEJANDRO GARCIA | $3,335.28 | $2,234.64 | $1,100.64 |
| MICHAEL FAILLACE & ASSOCIATES, P.C. (amount subject to approval by the Court) | $50,000.00 | $50,000.000 (to "Michael Faillace & Associates, P.C.") | N/A |
| TOTAL SETTLEMENT | $150,000.00 | | |